UNITED STATES of America,
Plaintiff–Appellant,

v.

TRI–STATE INSURANCE CO. OF
MINNESOTA and Transamerica Insur-
ance Company, Defendants–Appellees,

v.

BAUMANN–FURRIE AND COMPANY,
James Welsh and Adeline Welch,
Third–Party Defendants–Appellee.

No. 90–5569.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1991.

Decided Oct. 7, 1991.

Susan Sleater, Washington, D.C., argued, (Stuart M. Gerson, Jerome G. Arnold and Barbara Biddle, Washington, D.C., on the brief), for plaintiff-appellant.

Joseph A. Nilan and Mark Bloomquist, Minneapolis, Minn., argued (Mark J. Johnson and L.H. May, Jr., on the brief), for appellee.

Before LAY, Chief Judge, RONEY *,
Senior Circuit Judge, and WOLLMAN,
Circuit Judge.

PER CURIAM:

In this case against the sureties of a bankrupt warehouse, the United States on behalf of the Commodity Credit Corporation (CCC) appeals from the dismissal of its claims as being time-barred. The issue is whether the running of the applicable six-year statute of limitations was triggered when an anonymous tipster placed under the door of a CCC satellite office a penciled-over financial statement suggesting the bankrupt had misstated to the CCC its net worth, its solvency, and the value of grain on hand. We hold that the information received at that time was insufficient to put the Government on notice that it had a viable claim against the sureties such as to trigger the running of the period of limitations. We reverse and remand.

The Commodity Credit Corporation is a wholly-owned Government corporation which stored corn, soybeans and wheat with Ghent Grain & Feed, Inc., a public grain warehouseman. When Ghent failed to deliver all of the grain stored, CCC sought the value of the missing grain from Transamerica Insurance Company and Tri–State Insurance Company of Minnesota, the sureties on the indemnity bonds which

* The HONORABLE PAUL H. RONEY, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

secured the faithful performance of the warehouseman's obligations to CCC.

Ghent failed to deliver the grain on the delivery date, October 15, 1983. On November 1, 1983, Ghent filed for bankruptcy. Almost six years later, the United States filed suit against the surety bonding companies on August 18, 1989. More than six years by three days before the filing of the suit, on August 15, 1983, representatives of CCC in Minnesota found a Ghent financial statement under a door with pencilled-over markings showing that Ghent had overstated its net worth by about $400,000. The district court held that the applicable six-year statute of limitations[1] began to run upon receipt of that financial statement.

The rationale of that holding is this: Ghent breached its contract when it failed to have on hand sufficient quantities of grain to satisfy its contracts. Whenever that event occurred, CCC had a cause of action. The six-year statute of limitations on that cause of action would be tolled until CCC discovered that event had occurred, the facts having been fraudulently concealed by Ghent. The financial statement it received on August 15, 1983 put CCC on notice that Ghent had breached its contracts. Therefore, the suit filed six years and three days after it received notice of the breach was untimely filed.

The Government argues the receipt of the anonymous, pencilled-over balance sheet was insufficient notice of the breach of contract. The CCC did not "discover" the breach until August 23, 1983, after it inspected Ghent's warehouse, an inspection that was triggered by receipt of the anonymous tip. In any event, the Government argues as its primary point on appeal that its cause of action did not accrue until Ghent failed to deliver the grain on October 15.

This case is somewhat confused because of the lack of clarity with which the Government alleged and presented its case to the district court and on appeal. Since this is an appeal from a summary judgment, however, and because of the notice pleading rules in the federal court, we must view the case most strongly in favor of the non-moving plaintiff.

Under the bonds being sued upon, the sureties guaranteed the faithful performance of Ghent on its contract with CCC in two respects: first, that Ghent would keep adequate grain inventories on hand to meet its contractual obligations to CCC; second, that Ghent would properly deliver the grain due CCC on the delivery date. The Government has two different causes of action as a result of the facts alleged in the complaint. *First*, it has a cause of action for failure to maintain proper inventories of grain. This is the only cause of action against Transamerica, whose bond terminated on June 2, 1983. There was no alleged failure of delivery during the period covered by its bond. *Second*, CCC has a cause of action for failure to deliver its grain on October 15. This was during a period when Tri-State's bond was in effect. Thus it would appear that CCC has both causes of action against Tri-State.

We hold that an anonymous tip, such as received here, does not put a person on sufficient notice of the facts indicated in the tip to trigger a statute of limitations until a reasonably prompt investigation either identifies the source as probably reliable or shows the information as probably accurate.

The district court correctly relied upon Eighth Circuit cases in holding that in cases involving fraudulent concealment, a cause of action accrues and the statute of limitations begins to run when the plaintiff receives notice of a possible claim and not later when the plaintiff verifies the existence of the claim. *See. Goellner v. Butler*, 836 F.2d 426, 432 (8th Cir.1988); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 693 (8th Cir.1981).

Neither of these cases involved anonymous tipsters. In *Goellner*, a patient received the information that put her on notice of a possible claim from her own bodily pain and reaction and from literature from the health provider, as well as her general

1. 15 U.S.C. § 714b(c).

knowledge of the medical procedure for which she sought redress on the ground of misrepresentation, fraud, and fraudulent concealment.

In *Buder,* the plaintiff purchaser of securities received the information held to put him on notice of his claim from the brokerage house itself, and the financial statements received from the companies in which he had invested.

No one knows to this day who supplied the information to CCC concerning the possibility of shortages in Ghent's grain inventory or where they got the information. We have little doubt but that if an attorney filed a suit based on such an anonymous tip that later proved to be from an unreliable source or that slight investigation would prove to be false, Rule 11 sanctions would be seriously considered. Although the rule is that the tolling of a limitations statute does not continue until the basis of a claim is completely verified, it should be delayed until such time as the plaintiff has the opportunity to conduct some investigation of one of two things: either the identity of the tipster which would validate the probability of the essential accuracy of the information, or sufficient facts to verify the probable accuracy of the information so received.

We need not decide whether the anonymous tip was sufficient to require the CCC to investigate, since it did investigate. We need not decide if the running of the statute of limitations did not begin until October 15 when the grain was not delivered, since the complaint is within the period of limitations even if it begins to run when the CCC verified the apparent accuracy of the anonymous tip. We need not decide if the information CCC obtained on August 23 was in fact sufficient to trigger the running of the statute of limitations, because the claim was brought within six years of that date.

Diligent and able counsel apparently have found no case, for none have been pointed out to the Court, in which the knowledge of a plaintiff similarly situated to the CCC was based on information received from an unknown source. Our own canvass of the cases relied upon by the parties reveals none. There is little case law to guide this narrow decision. We can assume that if the corrected balance sheet was known to be from some source that should be reliable, the need for further investigation might not prevent the commencement of the limitations period. We can assume that if the information received were in some way self-proving, its validity evident on its face, the period might immediately commence to run. But the defendants appropriately do not even argue that such is the case here.

Typical of the cases cited which involve information that may have put plaintiff on notice of a claim, in addition to *Buder* and *Goellner* are: *Pinney v. Edward D. Jones & Co.,* 718 F.Supp. 1419 (W.D.Ark.1989) (financial information in public domain); *Jensen v. Snellings,* 636 F.Supp. 1305, 1310 (E.D.La.1986) (information received from attorney, bank representative, corporate officer, accountant's report); *Koke v. Stifel, Nicolaus & Co.,* 620 F.2d 1340, 1343–49 (8th Cir.1980) (slips confirming purchase of securities and monthly account statements); *Schmidt v. McKay,* 555 F.2d 30, 37 (2d Cir.1977) (letters from known sources); *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975) (congressional hearing and industry-wide publicity). Most of the cases seem to turn on whether plaintiff properly evaluated the information received, not whether the information was accurate. Accuracy is the big question as to *any* information provided anonymously. Some reasonable time must be afforded to answer that question.

Although the relatively long statute here would leave ample time for the investigation required to establish the probable validity of the claim, the principle decided here would apply, no matter how short the statute. We, therefore, reverse the summary judgment which was entered by the district court on the ground that the statute of limitations barred the claim.